IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STAR IRON WORKS, INC.,

           Plaintiff,

v.                                  CIVIL ACTION NO. 3:08-CV-1040

J & L EQUIPMENT COMPANY
INC., a West Virginia Corporation
and J & L SUPPLY CO., a West
Virginia Corporation,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court **LIFTS THE STAY**, **REOPENS** this case, **DENIES** Plaintiff Star Iron Works, Inc.'s Motion for Summary Judgment [doc. no. 25], and **GRANTS** Defendants J & L Equipment Company, Inc.[1] and J & L Supply, Co.'s Motion for Summary Judgment [doc. no. 28].

**I.
FACTS**

Defendant J & L Equipment purchased drilling equipment from Plaintiff. After failing to pay for the equipment, Plaintiff filed a Complaint in Pennsylvania state court and received a default judgment against J & L Equipment on March 28, 2005. J & L Equipment then filed a Complaint in West Virginia state court challenging the judgment by arguing that Pennsylvania

---

[1]As will be discussed later in this Opinion, J & L Equipment Company, Inc. filed for bankruptcy after the motions for summary judgment were filed, and it was dissolved as an entity by the bankruptcy court. Thus, J & L Equipment Company, Inc. no longer exists. For the sake of convenience, the Court continues to refer to J & L Equipment Company, Inc. as one of the defendants as it did exist at the time the summary judgments were filed.

not have jurisdiction over it. Plaintiff removed the case to this Court, and this Court found the Pennsylvania judgment was entitled to full faith and credit and entered judgment in favor of Plaintiff on April 27, 2006, for $329,267.34, plus interest. Thereafter, J & L Equipment went out of business and never paid the judgment.

## II.
## DISCUSSION

On September 5, 2008, Plaintiff filed the current action against J & L Equipment and J & L Supply Co. in an attempt to collect its judgment. Plaintiff claims that J & L Equipment went out of business to avoid paying the judgment, and that J & L Supply is a fraudulent continuation and the alter ego of J & L Equipment. Plaintiff argues the companies violated the West Virginia Uniform Fraudulent Transfers Act (UFTA), West Virginia Code § 40-1A-1 *et seq.*, in J & L Equipment's efforts to avoid paying the judgment against it.

Pursuant to the UFTA, a fraudulent transfer to present and future creditors occurs when:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:
>
> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the

-2-

debtor were unreasonably small in relation to the business or transaction; or

(ii) Intended to incur, or believed or reasonably should have believed that he (or she) would incur, debts beyond his (or her) ability to pay as they became due.

(b) In determining actual intent under subdivision (1), subsection (a), consideration may be given, among other factors, to whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

W. Va. Code § 40-1A-4. Plaintiff argues that the evidence establishes that Defendants violated several of these subsections and, therefore, the Court should grant summary judgment in its favor.

In support of its position, Plaintiff asserts J & L Equipment violated subsection (b)(9) and (10)[2] as it became insolvent and transferred assets shortly after the judgment was entered against it. Plaintiff points to the deposition of Robert Joy, the President of both Defendants, who testified that J & L Equipment stopped doing business after it was informed it owed the judgment and did not have any money.[3] In addition, Plaintiff claims the evidence shows the two corporations are closely related and J & L Supply is an "insider" as contemplated by (b)(1). Plaintiff asserts the evidence demonstrates that Mr. Joy not only served as the President of both corporations, but he also was the sole board member of both companies. The corporations also were located at the same address, shared a telephone number, and shared a receptionist who answered the phone simply "J & L." In addition, Plaintiff argues Defendants violated subsection (b)(5) as, after J & L Equipment ceased doing business, J & L Supply assumed some of its personal property, some of its

---

[2]Plaintiff actually cites subparagraph 8 instead of subparagraph 10, but the Court believes Plaintiff intended to cite subparagraph 10.

[3] The testimony was as follows between counsel for Plaintiff and Mr. Joy:

> Q: Okay. When did J & L Equipment stop doing business?
>
> A: Well, I guess when we were informed by you we owed $325,000 and didn't have any money.

*Deposition of Robert Joy*, at 8 (Sept. 20, 2007).

employees, and it engaged in J & L Equipment's business activities and sold to J & L Equipment's customers.

Defendants, however, disagree with Plaintiff's assessment of the evidence and assert there is no factual basis for Plaintiff's claims. Defendants state they have actively and continuously operated as two independent business enterprises for over twenty years. J & L Equipment sold mining and construction equipment and J & L Supply sold air compressors and industrial equipment. J & L Equipment also exclusively sold to businesses within West Virginia, and J & L Supply sold to customers both within and outside of the state.

Melvin Nichols, who is a certified public accountant, kept the books for both companies. In his deposition, he explained that J & L Supply paid for all its own inventory, expenses, and rent. In addition, J & L Supply originally had no employees on its payroll. Instead, J & L Supply purchased its payroll from J & L Equipment whenever an employee was needed. After J & L Equipment stopped doing business, J & L Supply hired some of J & L Equipment's employees and started its own payroll. Both Messrs. Nichols and Joy also stated that J & L Supply picked up some of J & L Equipment's customers after it went out of business. However, Mr. Nichols said he never recorded any assumed debts or assets from J & L Equipment to J & L Supply.

Messrs. Joy and Nichols did state during their depositions that J & L Supply obtained several trucks that were in J & L Equipment's possession. According to the depositions, the trucks were subject to a bank loan that was co-signed by Mr. Joy. As J & L Equipment could no longer

pay the loans because it went out of business, Mr. Joy went to the bank on behalf of J & L Supply and J & L Supply assumed the loan and took possession of the trucks. Defendants argue that the transaction was basically a repossession and resale of the vehicles by the bank. Moreover, Defendants state there is no evidence regarding the value of the trucks at the time J & L Supply assumed the loan. Thus, Defendants argue Plaintiff cannot show that the trucks were worth more than the loan amount assumed by J & L Supply. Given these factors, Defendants assert Plaintiff cannot show the trucks were fraudulently transferred from one company to the other.

In fact, at the time the summary judgment motions were filed, there apparently was no valuation of J & L Equipment since it ceased doing business. In their Memorandum and at the pretrial conference held on August 31, 2009, Defendants claim that J & L Equipment has substantial assets consisting of replacement parts for drills used by the mining industry and those assets exceed the amount owed to Plaintiff. Thus, Defendants assert that J & L Equipment is not insolvent as defined by West Virginia Code § 40-1A-2(a). This section provides "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." In response to this assertion, Plaintiff filed a "Motion to Name Receiver and to Place Assets of Defendant J & L Equipment Company, Inc. Under Control of Receiver to Satisfy Debt of Defendant J & L Equipment Company to Plaintiff." However, the Court denied Plaintiff's motion by Order dated August 31, 2009, and stayed this matter for a period of sixty days to determine whether a settlement can be reached based upon the remaining assets which belong to J & L Equipment.

On October 28, 2009, J & L Equipment filed for bankruptcy, and an automatic stay of this case was granted pending completion of the bankruptcy proceeding. On January 27, 2011, Plaintiff informed the Court that the bankruptcy court entered an Order on November 19, 2010, dissolving J & L Equipment as a corporation and closed the bankruptcy case. Prior to the discharge, the bankruptcy court entered an Order on August 10, 2010, which authorized Star Iron Works to "proceed and execute against any personal property of the Estate to enforce and satisfy the June 6, 2006 judgment it obtained against J&L Equipment Company, Inc. In Civil Action No. 3:05-0307 before the United States District Court for the Southern District of West Virginia." Plaintiff reports Defendants have not voluntarily provided the personal property to Plaintiff, nor has Plaintiff attempted to execute the judgment to get the property.

As the bankruptcy court is completed, this Court **LIFTS THE STAY**, **REOPENS** this case, and now must resolve the pending summary judgment motions. To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

In this case, the Court finds there is no genuine issue of material fact and that Defendants are entitled to summary judgment. Although Plaintiff makes broad statements asserting fraudulent transfers, the Court finds no evidence to support its claims. Despite the fact that Mr. Joy was the President and sole stockholder in J & L Equipment and J & L Supply and the companies shared office space, the evidence demonstrates that the companies operated separately and independently of one another for many years and one did not serve as the alter ego of the other. Indeed, Mr. Nichols testified that the companies had separate books and each paid their own expenses, which included J & L Supply buying payroll from J & L Equipment.

When J & L Equipment ceased doing business, it is not refuted that J & L Supply hired some of J & L Equipment's former employees and started its own payroll. In addition, it solicited some of J & L Equipment's former customers. However, there is no evidence that either the employees or customers were under any contractual or other obligation to work or buy from

-8-

J & L Supply as a result of the relationship they had with J & L Equipment. Instead, it appears that J & L Supply simply offered employment to some of J & L Equipment's former employees and attempted to solicit some of J & L Equipment's former customers. The Court finds that these activities could hardly be considered a fraudulent transfer under UFTA.

Likewise, the transfer of the trucks appears to have been an arms-length transaction with the bank. Under the UFTA, an "asset" is defined as property of the debtor, but it "does not include . . . [p]roperty to the extent it is encumbered by a valid lien[.]" W. Va. Code 40-1A-1(b)(1). Here, there was a valid lien against the trucks and Plaintiff has produced no evidence that the value of the trucks exceeded the value of the loan. Thus, it is impossible to find that J & L Equipment fraudulently transferred the trucks to prevent Plaintiff from collecting its judgment.

### III.
### CONCLUSION

Accordingly, taken in a light most favorable to Plaintiff, the Court finds that there simply is insufficient evidence to create a genuine issue of material fact to show a fraudulent transfer under the UFTA. Therefore, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Motion for Summary Judgment.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 22, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE